Kiley L. Grombacher
Bradley Grombacher, LLP
31365 Oak Crest Drive, Suite 240
Westlake Village, CA 91361
Kgrombacher@bradleygrombacher.com
Telephone: 805-270-7100
Facsimile: 805-270-7589

Daniel J. Thornburgh (*pro hac vice*)
Aylstock, Witkin, Kreis & Overholtz, PLC
17 East Main Street, Suite 200
Pensacola, FL 32502
dthornburgh@awkolaw.com
Telephone: 850-202-1010
Fax: 850-916-7449

*Counsel for Plaintiff, Edmond Rambod*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

| | |
|---|---|
| EDMOND RAMBOD,<br><br>Plaintiff,<br><br>v.<br><br>Defendant "1" a/k/a "Anna Mhatre", et al.,<br><br>Defendants. | Case No. 2:24-cv-07215-AH(SK)<br><br>**EXHIBIT A - DECLARATION OF MICHAEL NASCA** |

# DECLARATION OF MICHAEL NASCA

I, Michael Nasca, declare as follows:

1. Declarant Background.

I am over the age of eighteen and a licensed private investigator, currently serving as Manager of MN Investigative and Intelligence Services LLC, doing business as IFW Global USA, a private investigative agency duly licensed in the State of Florida. I am also Chief Cryptocurrency Fraud Investigator at the law firm Aylstock, Witkin, Kreis & Overholtz, PLLC. Prior to entering private practice, I served more than twenty years as a federal law enforcement Special Agent with the U.S. Customs Service and later Homeland Security Investigations (HSI), specializing in financial crimes, trade-based money laundering, customs fraud, intellectual property violations, and complex transnational fraud schemes. During my federal tenure, I held the position of Cross Border Financial Task Force Advisor and was temporarily assigned on multiple occasions in 2012, 2013, and 2015 to Homeland Security Investigations Manila, Philippines, as the Cross Border Financial Investigations Advisor in support of international financial crime initiatives. While in the Philippines, I worked closely with the Philippine Bureau of Customs and senior government officials to strengthen bilateral enforcement coordination, assisted in establishing the first Philippine Joint Smuggling and Financial Task Force at Ninoy Aquino International Airport, and collaborated extensively with the Philippine National Bureau of Investigation on cross-border financial and human trafficking investigations. My work in the Philippines also included providing specialized training and operational guidance to Filipino federal and local law enforcement personnel in financial crime detection, smuggling interdiction, and investigative strategy development. Over the past six years in private practice, I have personally investigated more than one hundred cryptocurrency-related fraud matters, including

large-scale "pig butchering" investment schemes, romance-investment fraud, and multi-jurisdictional digital asset laundering operations, including matters with investigative links to the Philippines, and I continue to apply my extensive federal and international investigative experience to complex financial crime investigations before federal courts.

2. Scope of Work.

At attorney Daniel Thornburgh's request, I was asked to investigate ITECHNO Specialist Inc., (ITECHNO) to determine its current location and whether it continues to operate a scam call center in the Philippines or elsewhere.

3. Department of Justice Forfeiture Action.

ITECHNO has been accused by the United States Department of Justice in a federal forfeiture action filed in the United States District Court for the District of Columbia of being involved in cryptocurrency confidence scams commonly referred to as "Pig Butchering" scams.

4. Nature of the Alleged Scheme.

According to the Department of Justice, ITECHNO and its employees were involved in organized cryptocurrency confidence schemes designed to fraudulently induce victims to transfer cryptocurrency assets under false pretenses.

5. Location of Operations.

Based on documents received from the Philippine Securities & Exchange Commission (Philippine SEC), ITECHNO operated its business on the 7th and 10th floors of the Aseana One Building, located in the Aseana City area of Parañaque, Philippines.

6. Cryptocurrency Laundering.

According to the Department of Justice, ITECHNO employees were responsible for both perpetrating cryptocurrency confidence scams and laundering stolen and illicit cryptocurrency proceeds to Infiniweb Technology, Inc., also known as Infiniweb.

7. Infiniweb Background.

Records obtained from the Philippine Securities and Exchange Commission reflect that Infiniweb was, at one time, registered as a Philippine Online Gaming Operation (POGO) and is also registered in the British Virgin Islands.

8. Public Records and Criminal Associations.

Publicly available records concerning ITECHNO and Infiniweb are limited; however, those records indicate that Infiniweb's gaming license has been revoked and that both entities have been linked to human trafficking, Pig Butchering scams, and money laundering activities.

9. Travel to the Philippines.

In furtherance of my investigation, on February 17, 2026, I traveled to Manila, Philippines, arriving on February 19, 2026.

10. Initial Observations.

Upon arrival in Manila, I traveled to the Aseana One Building. I observed numerous young workers wearing lanyards that appeared to be required for entry into the building.

11. Security Presence.

I observed that the streets surrounding the Aseana One Building were heavily guarded, with armed guards patrolling the area. I further observed armed security personnel inside the building checking employee credentials prior to permitting entry.

12. Return Visit.

On February 20, 2026, I returned to the Aseana One Building and inquired with a front entry guard regarding the rental of a virtual office. I was directed to the reception area.

13. Aseana Two Building.

After speaking with reception personnel, I was permitted to proceed to the 11th floor of the Aseana Two Building. Aseana One and Aseana Two are connected buildings that share a common lobby.

14. Access to the Seventh Floor.

After touring the virtual office space and returning to the lobby, I proceeded to the Aseana One side of the complex and took an elevator to the 7th floor.

15. Heightened Security Measures.

Upon arrival on the 7th floor, I was met by security guards. The floor had a single entry and exit point, which was guarded. I observed that employees were required to display credentials, pass through metal detectors, be screened with handheld wands, and be physically patted down prior to entry.

16. Exit Controls and Device Restrictions.

I observed employees exiting the secured area and undergoing the same screening procedures. Based on my observations, employees were not permitted to bring devices into the building and were not permitted to remove company property from the floor. Electronic devices, including cellular phones, were not allowed to leave the secured area, and any devices used inside appeared to be retained on the floor.

17. Professional Assessment of Security Measures.

Based on my knowledge, training, education, and experience, I am aware that cryptocurrency scam centers and fraud compounds commonly employ heightened security measures, including armed guards, restricted access points, metal detectors, physical searches, and strict controls on electronic devices. The security measures I observed on the 7th floor of the Aseana One Building were consistent with those used by such operations.

18. Removal from the Floor.

After several minutes of observation, I was asked to leave the floor, which I did.

19. First Employee Interview.

While exiting the building, I entered an elevator with an individual wearing a lanyard identifying the company TOPBET TECH CORP. The individual confirmed that he was an employee of TOPBET TECH CORP.

20. Cryptocurrency Activity.

I asked whether cryptocurrency transactions were being conducted on the 7th floor, and the individual responded affirmatively.

21. Second Employee Interview.

After exiting the building, I observed another individual wearing a TOPBET TECH CORP. lanyard entering a nearby convenience store. Upon exiting the store, I initiated a conversation with her.

22. Admissions Regarding Operations.

Docusign Envelope ID: 997E4903-2897-81F5-8209-DF51C8453B29

This individual stated that she was a contract employee of TOPBET TECH CORP, that TOPBET TECH CORP had occupied the building for several years, that TOPBET TECH CORP occupied both the 7th and 10th floors of the Aseana One Building, that the company was involved in cryptocurrency trading, and that it was engaged in Pig Butchering scams.

23. Professional Opinion.

It is my professional opinion, based on my knowledge, training, education, and experience, as well as my personal observations and investigation into ITECHNO, that ITECHNO is continuing to operate a cryptocurrency laundering and scam operation on the 7th and 10th floors of the Aseana One Building, and that the operation has changed its name from ITECHNO Specialist Inc. to TOPBET TECH CORP in an effort to conceal its ongoing activities.

24. Conclusion.

The observations, admissions, and security practices described herein are consistent with an ongoing cryptocurrency fraud and laundering operation of the type alleged by the United States Department of Justice.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 5th day of March, 2026.

Signed by:
Michael Nasca
DCD105CCBEE442B...

Michael Nasca
Aylstock, Witkin, Kreis & Overholtz, PLLC
Chief Cryptocurrency Fraud Investigator
PI Lic. No. C1800504